IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICTOR E. WARD, | |
| Plaintiff, | |
| vs. | Case No. 13-cv-561-SMY-PMF |
| DYNEGY INCORPORATED, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Dynegy Incorporated's ("Dynegy") (1) Motion for Summary Judgment (Doc. 13) to which plaintiff Victor E. Ward has responded (Doc. 15); and (2) Motion to Strike (Doc. 18) to which Ward has failed to respond. For the following reasons, the Court grants both motions.

1. Background

Ward has been an employee of Dynegy at its Baldwin, Illinois, location since February 2002. Ward is a union member and works under a collective bargaining agreement between Dynegy and International Brotherhood of Electrical Workers, Local 51. In the course of his employment, Ward has made two complaints to Dynegy concerning his former group leader, Dave Mesch. The first complaint, made between 2002 and 2004, involved neither discrimination nor sexual harassment. Ward's 2007 complaint alleged Mesch had sexually harassed Ward, but it did not allege racial discrimination. After an investigation, Dynegy management disciplined Mesch. Mesch ultimately resigned his employment with Dynegy in December 2007. Other than this 2007 sexual harassment complaint against Mesch, Ward did not file any other sexual harassment or racial discrimination complaints with Dynegy.

In 2011, Dynegy promoted Ward to the position of shift tech. Dynegy management was aware of the 2007 sexual harassment complaint. Prior to his promotion, Ward earned $31.53 per hour as a unit attendant. Upon his promotion to shift tech, Ward earned $31.98 per hour. This rate of pay was in accord with the terms of the collective bargaining agreement. Ward complained that his rate of pay was lower than that of other shift techs. Dynegy launched an investigation of the other nine shift techs' pay. The sole inquiry in this investigation was to determine whether the other shift techs had been given the appropriate raise *upon* their promotion to shift tech under the terms of the collective bargaining agreement. The investigation revealed that two other employees, one Caucasian and one African-American, were overpaid upon their promotions to shift tech. Dynegy concluded that the remaining seven shift techs were given the appropriate raise upon their promotions.

Anthony Herbert, the African-American overpaid shift tech, was paid $37.96 per hour instead of $30.73 per hour as required by the collective bargaining agreement. Wes Sroka, the Caucasian overpaid shift tech, was paid $37.96 per hour instead of $30.75 per hour as required by the collective bargaining agreement. Upon discovering these pay discrepancies, Dynegy reduced Herbert's and Sroka's rates of pay to the appropriate levels, and they were not required to pay back the overpaid amount.

After Ward filed his EEOC charge of discrimination, Dynegy launched another pay investigation and discovered that another Caucasian shift tech, Korey Wedemeyer, was paid too much. Wedemeyer's pay discrepancy resulted from an inappropriate pay increase that occurred *before* his promotion to shift tech, unlike Herbert and Sroka who were given inappropriate raises *upon* their promotions to shift tech. Wedemeyer was earning $40.11 per hour, rather than the appropriate $33.19 under the collective bargaining agreement. After discovering the

overpayment, Dynegy adjusted Wedemeyer's pay to the appropriate level pursuant to the terms of the collective bargaining agreement.  Dynegy contends that the overpayments to these three employees resulted from a mistake.  Ward conceded in his deposition that the only employee he believes was paid more than him for discriminatory reasons was Wedemeyer (Doc. 14-3, p. 20).  Ward's sole basis for believing he was paid less than Wedemeyer are rumors that management at Dynegy were upset that Ward made the complaint that ultimately led to Mesch's departure from the company. Further, he asserts in his affidavit that the pay discrepancies could not have been a mistake because Dynegy's payroll clerk was supervised by Dynegy management.

On June 13, 2013, Ward filed his Complaint alleging that Dynegy discriminated on the basis of his race and retaliated against him in violation of Title VII of the Civil Rights Act of 1964.  Dynegy filed its Motion for Summary Judgment arguing it is entitled to judgment as a matter of law because Ward cannot show that Dynegy intentionally discriminated and/or retaliated against him.  Thereafter, Dynegy filed its Motion to Strike portions of Ward's affidavit.  The Court will first take up Dynegy's Motion to Strike.

2. Motion to Strike (Doc. 18)

Dynegy asks the Court to strike portions of Paragraphs Two, Three, and Four of Ward's affidavit attached to his response to Dynegy's Motion for Summary Judgment.  Ward failed to respond to Dynegy's motion to strike.

The Federal Rules of Civil Procedure provide that an affidavit or declaration offered to support or oppose a Motion for Summary Judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  A court therefore cannot consider declarations that are inadmissible as irrelevant or hearsay or that otherwise fail to satisfy the aforementioned

Rule. *Wiley v. United States,* 20 F.3d 222, 225–26 (6th Cir.1994); *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998). Further, where there is a discrepancy between a deposition and a supplemental affidavit, the district courts have "great discretion" in determining whether to ignore "attempts to patch-up potentially damaging deposition testimony." *Maldonado v. U.S. Bank*, 186 F.3d 759, 769 (7th Cir. 1999). As a final matter in considering a motion to strike, the Court must "use a scalpel, not a butcher knife" and only strike portions that are inadmissible under Fed. R. Civ. P. 56(c)(4) rather than strike an affidavit in its entirety. *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 593 (6th Cir. 2009). The Court will consider each paragraph in turn.

    a.  Paragraph Two Testimony

First, Dynegy asks the Court to strike the portion of Ward's testimony in Paragraph Two regarding P.J. Colston's alleged complaint to Dynegy. The following is the relevant portion of Paragraph Two:

> 2. . . . When Corey Wiedemeyer (sic) was awared (sic) the shift tech. position and given a higher rate of pay than he was qualified for, a coworker, PJ Colston made a complaint. PJ bid for the same position and had the two years as a unit attendant or four years working inside the plant. Corey did not. PJ complained about the fact that Corey won the bid and that he lacked the requisite experience and was being paid at a higher rate. . . . This cannot have been a mistake in that PJ Colston had brought it to everyone's attention earlier yet Corey continued to be paid. . . .

Doc. 15-1, p. 1.

Ward does not identify from where his knowledge of Colston's complaint came; however, Ward's deposition makes it clear that he gained this knowledge from his conversation with Colston. As such, Dynegy contends this portion of the affidavit is hearsay because Ward is using Colston's statements for the truth of the matter asserted. Second, Dynegy contends this testimony contradicts Ward's prior deposition. Specifically, Ward made the prior relevant statements in a deposition:

4

> Q. Did P.J. tell you he complained to the company about anything relating to pay or was it just that he didn't get the job versus Korey getting the job?
> A. He just told me he went on about the time frame. He didn't say anything about the pay.

Doc. 14-3, p. 10.

The Court agrees that the portions of Ward's affidavit in which he attests to the statements made by Colston are inadmissible hearsay. Further, to the extent the affidavit maintains that Colston discussed pay with Ward, the affidavit is inadmissible because it contradicts Ward's prior deposition testimony. Accordingly, the Court strikes the portions of Paragraph Two in which Ward testifies to statements made by Colston.

    b. Paragraph Four Testimony

Second, Dynegy asks the Court to strike the portion of Paragraph Four of Ward's affidavit in which he attests that Sroka's, Herbert's, and Wedemeyer's pay later increased because it is inadmissible hearsay. The following is the portion of Paragraph Four at issue:

> 4. . . . Shortly after the pays were reduced, Wes Sroka and Tony Herbert's pay were adjusted upward and as well as Corey's. Wes Sroka told me that their pay was returned back up after a short period.

Doc. 15-1, p. 2. This testimony is being offered for the truth of the matter asserted. As such, the Court agrees that the foregoing is inadmissible hearsay and strikes this portion of Paragraph Four of Ward's affidavit.

    c. Paragraph Three Testimony

Third, Dynegy asks the Court to strike the portion of Paragraph Three of Ward's affidavit regarding Rhonda Hancock's actions because Ward lacks the personal knowledge to support his assertions about Hancock's behavior. Paragraph Three states as follows:

> 3. In my experience Rhonda Hancock, who was payroll clerk, at the time, was always supervised and management had control of her activities and functions.

5

> This was not an instance where Rhonda went out on a lark or on her own and awarded these higher pays without approval or some plan.

Doc. 15-1, p. 2. Ward failed to introduce any evidence establishing he had personal knowledge of Hancock's duties. As such, the Court strikes Paragraph Three. The Court grants Dynegy's Motion to Strike in its entirety and will now consider Dynegy's Motion for Summary Judgment.

3. Motion for Summary Judgment (Doc. 13)

Dynegy seeks summary judgment on both Ward's discrimination and retaliation causes of action. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine

issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

    a. Race Discrimination

First, Dynegy argues it is entitled to judgment as a matter of law because Ward cannot establish that Dynegy intentionally discriminated against him on the basis of race. Ward failed to address this argument in his response to Dynegy's Motion for Summary Judgment. As such, Ward's race discrimination claim is deemed abandoned, *see Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003), and the Court grants Dynegy's Motion for Summary Judgment in that respect.

    b. Retaliation

Second, Dynegy contends it is entitled to judgment as a matter of law on Ward's Title VII retaliation claim because Ward cannot establish that Dynegy intentionally retaliated against him for making a prior sexual harassment complaint to Dynegy. Ward can establish his retaliation claim by either the direct or indirect method of proof. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007). Under the direct method of proof, a plaintiff may establish discriminatory intent by direct evidence or through a "convincing mosaic" of circumstantial evidence. *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012).

A plaintiff may proceed under the "convincing mosaic" approach through one of three categories. *Id*. at 860. The first category of evidence "includes 'suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of [retaliatory] intent might be drawn.'" *Id*. (citing *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)). The second category includes "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Coleman*, 667 F.3d at 860

7

(quoting *Volovsek v. Wis. Dept. of Agr.*, 344 F.3d 680, 689 (7th Cir. 2003). Under the third category, the plaintiff may present "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman*, 667 F.3d at 860 (*Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)). The "circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003).

Under the indirect method or the burden-shifting approach, a plaintiff may establish discriminatory intent under the burden-shifting paradigm set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). First, a plaintiff "must establish a *prima facie* case by demonstrating, among other things, that a similarly-situated person outside the protected class was treated better." *Adams*, 324 F.3d at 939. Once a plaintiff establishes a *prima facie* case, the court presumes discrimination, and the defendant "must articulate a legitimate, nondiscriminatory reason for its employment action." *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 550 (7th Cir. 2000). Thereafter, the plaintiff "must establish that the reason offered by the [defendant] is merely a pretext for discrimination." *Id*.

Ward does not specifically identify the method under which he wishes to prove his claim. There is no direct evidence of discrimination, and Ward has failed to provide circumstantial evidence of retaliation. For instance, the timing was not suspicious because there were four years between the time Ward lodged the sexual harassment complaint in 2007 and the time at which he was promoted to shift tech in 2011. *See Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation."). Ward has also failed to produce any ambiguous oral or written statements in this respect. He argues only that one employee was treated better than him.

8

Accordingly, any argument of "systematically better treatment" necessarily fails because one employee alone cannot establish such a claim.

Ward, however, does argue that Dynegy's offered explanation is mere pretext. Thus, he may argue pretext as circumstantial evidence under the "convincing mosaic" approach or prove his claim under the indirect method. Under either method, his claim fails. The evidence he introduces in support of pretext amounts simply to unsupported assertions of issues of material fact.

Under the indirect method, Ward has provided evidence that Wedemeyer, a shift tech like Ward, was paid a higher wage than what was appropriate under the collective bargaining agreement while Ward was paid the appropriate wage under the collective bargaining agreement. Thus, Ward has produced evidence that Wedemeyer was treated better than him. Ward was in the protected class because he had previously made a sexual harassment complaint. Wedemeyer was not in the protected class. Accordingly, the Court must presume discrimination.

Dynegy has presented evidence that its overpayment to Wedemeyer was a result of a mistake in calculating Wedemeyer's pay in the form of Rhonda Hancock's declaration in which she attests she independently made the mistake in setting Wedemeyer's pay absent direction from Dynegy management. In order to maintain his action, Ward must establish that Dynegy's mistake explanation was merely a pretext. In support of his contention that Dynegy's actions were pretextual, Ward argues in his response that Dynegy's "actions were part of a pattern and not distinct errors as claimed by the payroll clerk" (Doc. 15, p. 4). However, he only supports these assertions with inadmissible evidence in the form of his own affidavit, and the Court has already stricken the relevant portions. His remaining assertions are not supported by admissible evidence and amount simply to alleged factual disputes. As such, Ward's retaliation claim

cannot survive summary judgment and the Court grants Dynegy's motion for summary judgment in that respect.

4. Conclusion

For the foregoing reasons, the Court **GRANTS** Dynegy's (1) Motion for Summary Judgment (Doc. 13) and (2) Motion to Strike (Doc. 18). The Court further **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** October 14, 2014

s/ Staci M. Yandle
**STACI M. YANDLE**
**DISTRICT JUDGE**
